UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
WILMA LYNN SUTTON

               Plaintiff,

    - against -

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.
----------------------------------------------------------x

**MEMORANDUM & ORDER**
20-CV-3441 (PKC)

PAMELA K. CHEN, United States District Judge:

Plaintiff Wilma Lynn Sutton commenced this action under 42 U.S.C. § 405(g), seeking judicial review of the decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for Social Security Disability Insurance Benefits ("DIB"). Plaintiff moved for judgment on the pleadings and the Commissioner filed an opposition. (Dkts. 13, 17.) For the reasons below, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion. This case is remanded for further proceedings consistent with this Memorandum and Order.

## BACKGROUND

**I.  Procedural History**

On July 5, 2017, Plaintiff applied for DIB. (Administrative Transcript ("Tr.") 259, 332-38.[1]) The agency initially denied her application on October 18, 2017. (Tr. 262.) Following a hearing on March 29, 2019 (Tr. 210–45), Administrative Law Judge ("ALJ") Jason A. Miller found that Plaintiff was not disabled and therefore not entitled to DIB on August 22, 2019 (Tr.

---

[1] Page references prefaced by "Tr." refer to the continuous pagination of the Administrative Transcript and not to the internal pagination of the constituent documents or the pagination generated by the Court's CM/ECF docketing system.

185–245, 249–59, 262–67). On September 19, 2019, Plaintiff requested review of the ALJ's decision by the Appeals Council of the SSA's Office of Appellate Operations ("Appeals Council"). (Tr. 328–31.) The Appeals Council denied Plaintiff's request for review on May 29, 2020. (Tr. 1–7.) Plaintiff timely commenced this action on July 30, 2020.[2]

## II. The ALJ's Decision

### A. The Five-Step Inquiry

In evaluating disability claims, the ALJ must conduct a five-step inquiry. The Plaintiff bears the burden of proof at the first four steps of the inquiry, and the Commissioner bears the burden at the final step. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citation omitted). First, the ALJ determines whether the plaintiff is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the answer is yes, the plaintiff is not disabled. *Id.*

If the answer is no, the ALJ proceeds to the second step to determine whether the plaintiff suffers from a severe impairment. *Id.* § 404.1520(a)(4)(ii). An impairment is severe when it "significantly limits [the plaintiff's] physical or mental ability to do basic work activities." *Id*.

---

[2] According to 42 U.S.C. § 405(g),

> [a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which [she] was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to [her] of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g). "Under the applicable regulations, the mailing of the final decision is presumed received five days after it is dated unless the [plaintiff] makes a reasonable showing to the contrary." *Kesoglides v. Comm'r of Soc. Sec.*, No. 13-CV-4724 (PKC), 2015 WL 1439862, at *3 (E.D.N.Y. Mar. 27, 2015) (citing 20 C.F.R. §§ 404.981, 422.210(c)). The final decision was issued May 29, 2020 (Tr. 1), and the Complaint was filed on July 30, 2020 (Complaint, Dkt. 1), 57 days after the presumed receipt date of the decision (June 3, 2020), rendering this appeal timely.

2

§ 404.1522(a). If the plaintiff does not suffer from an impairment or combination of impairments that is severe, then the plaintiff is not disabled. *Id.* § 404.1520(a)(4)(ii).

If the plaintiff does suffer from an impairment or combination of impairments that is severe, then the ALJ proceeds to the third step and considers whether it meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). *Id.* § 404.1520(a)(4)(iii); *see also id.* Pt. 404, Subpt. P, App'x. 1. If the ALJ determines at step three that the plaintiff has one of the listed impairments, then the ALJ will find that the plaintiff is disabled under the Act. *Id.* § 404.1520(a)(4)(iii).

If the plaintiff does not have a listed impairment, the ALJ must determine the plaintiff's residual functional capacity ("RFC")[3] before continuing to steps four and five. To determine the plaintiff's RFC, the ALJ must consider the plaintiff's "impairment(s), and any related symptoms, [that] may cause physical and mental limitations that affect what [the plaintiff] can do in a work setting." *Id.* § 404.1545(a)(1). The ALJ is responsible for assessing the plaintiff's RFC "based on all the relevant evidence in the case record." *Pellot v. Comm'r of Soc. Sec.*, No. 18-CV-3337 (AMD), 2019 WL 3500919, at *1 (E.D.N.Y. July 31, 2019) (citation omitted). The ALJ will then use the RFC finding in step four to determine if the plaintiff can perform past relevant work. *Id.* § 404.1520(a)(4)(iv). If the answer is yes, the plaintiff is not disabled. *Id.* If the plaintiff cannot, or if no past relevant work exists, the ALJ will proceed to step five and determine whether the

---

[3] "[A]n individual's RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013) (*per curiam*). "[A] claimant is not disabled if her 'residual functional capacity and vocational abilities make it possible for her to do work which exists in the national economy, but she remains unemployed because of her inability to get work,' or because of 'the hiring practices of employers,' or because the claimant 'would not actually be hired to do work she could otherwise do.'" *Sczepanski v. Saul*, 946 F.3d 152, 157 (2d Cir. 2020) (quoting 20 C.F.R. §§ 416.966(c)(1), (3), (7)).

plaintiff, given his or her RFC, age, education, and work experience, has the capacity to perform other substantial gainful work in the national economy. *Id.* § 404.1520(a)(4)(v). If the answer is yes, the plaintiff is not disabled; otherwise, the plaintiff is disabled and is entitled to benefits. *Id.*

    **B.**    **The ALJ's Decision**

At step one, the ALJ here determined that Plaintiff had not engaged in substantial gainful activity "since April 12, 2017, the alleged onset date." (Tr. 191.) At step two, the ALJ determined that Plaintiff had the following severe impairments: "mild degenerative osteoarthritis[4] of the lumbar spine and left hip; bipolar disorder; and substance use disorder in remission." (Tr. 191.) The ALJ noted that these impairments "are shown to result in vocationally significant limitations and have lasted at a 'severe' level for a continuous period of more than 12 months." (Tr. 191.) The ALJ also determined that Plaintiff's urinary incontinence, which was not raised in the original application, was not severe because (1) Plaintiff did not describe the condition as part of her disability during her hearing testimony, and (2) it "[did] not appear to have significantly limited her physical ability to do basic work activities." (Tr. 191.)

At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of the listed impairments in the Listings. (Tr. 191.) The ALJ found that Plaintiff had the RFC to perform a range of medium work as defined in 20 C.F.R. § 404.1567,[5] because she "[could] lift and/or carry 50 pounds occasionally" and "25 pounds frequently," and "[could] stand

---

[4] "Osteoarthritis (OA) is the most common form of arthritis. Some people call it degenerative joint disease or 'wear and tear' arthritis. It occurs most frequently in the hands, hips, and knees." Arthritis, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/arthritis/basics/osteoarthritis.htm (last visited Mar. 1, 2022).

[5] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, [the ALJ must] determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567.

4

and/or walk" and "sit" for "6 hours per 8-hour workday" each. (Tr. 194.) The ALJ also concluded that Plaintiff could "never climb ladders or scaffolds" and could not "tolerate exposure to unprotected heights or moving mechanical parts," but could "understand, remember, and carry out, simple instructions, and [could] make simple work-related decisions." (Tr. 194.) At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (Tr. 203.) At step five, however, the ALJ found that "considering [Plaintiff's] age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (Tr. 204.) With respect to Plaintiff's mental limitations, the ALJ found under SSR 85-15 that Plaintiff could "perform simple work and make simple decisions, comport[ing] with the full range of unskilled work." (Tr. 205) (citations omitted). The ALJ thus concluded that Plaintiff was not disabled under the Act.

### C. Plaintiff's Appeal

On September 19, 2019, Plaintiff sought review of the ALJ's decision by the Appeals Council. (Tr. 330.) Plaintiff submitted additional records from Interfaith Medical Center and a Psychiatric/Psychological Impairment Questionnaire from a psychiatrist, dated November 11, 2019, which had not been available at the hearing before the ALJ. (Tr. 2.) The Appeals Council denied Plaintiff's appeal and found that the new evidence did "not affect the decision about whether [Plaintiff was] disabled beginning on or before August 22, 2019." (Tr. 2.)

## STANDARD OF REVIEW

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of benefits. 42 U.S.C. § 405(g). In reviewing a final decision of the Commissioner, the Court's role is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera*, 697 F.3d at 151 (citation omitted). "'Substantial

evidence' is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (*per curiam*) (brackets omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In determining whether the Commissioner's findings were based on substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* (citation omitted). But courts must "defer to the Commissioner's resolution of conflicting evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (citation omitted). If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld. 42 U.S.C. § 405(g); *see also Cichocki v. Astrue*, 729 F.3d 172, 175-76 (2d Cir. 2013) (*per curiam*).

## DISCUSSION

Plaintiff argues that the Court should remand this action because (1) the ALJ failed to properly evaluate the medical opinion evidence in determining Plaintiff's mental RFC; (2) the ALJ erred by relying on the Medical-Vocational Guidelines; (3) the evidence before the Appeals Council warranted remand; and (4) the ALJ failed to properly evaluate Plaintiff's subjective statements. For the reasons below, the Court grants Plaintiff's motion and remands this case to the SSA.

**I.   Medical Source Opinions**

    **A.   Legal Standard – Medical Source Opinions**

Previously, the SSA followed the "treating physician rule," which required the agency to give controlling weight to a treating source's opinion so long as it was "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence" in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Estrella v.*

6

*Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019).  The 2017 regulations changed this standard for applications filed "on or after March 27, 2017."  20 C.F.R. §§ 404.1520c, 416.920c.  Under the new regulations, the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources."  *Id.* §§ 404.1520c(a), 416.920c(a).

Instead, when evaluating the persuasiveness of medical opinions, the Commissioner will consider the following five factors: (1) supportability; (2) consistency; (3) relationship of the source with the claimant, including length of the treatment relationship, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship, and whether the relationship is an examining relationship; (4) the medical source's specialization; and (5) other factors, including but not limited to "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA] disability program's policies and evidentiary requirements."  *Id.* §§ 404.1520c(c), 416.920c(c).

The ALJ must articulate "how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record.  *Id.* §§ 404.1520c(b), 416.920c(b).  The "most important factors" in determining the persuasiveness of a medical source's medical opinions or prior administrative medical findings are the supportability and consistency factors.  *Id.* §§ 404.1520c(b)(2); 416.920c(b)(2).  With respect to supportability, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1).  As to consistency, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative

7

medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).  While the ALJ "may, but [is] not required to, explain how [he] considered" the factors of the relationship with the claimant, the medical source's specialization, and other factors, the ALJ must "explain how [he] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings."  *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).   When an ALJ "find[s] that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported [according to Sections 404.1520c(c)(1), 416.920c(c)(1)] and consistent with the record [according to Sections 404.1520c(c)(2), 416.920c(c)(2)] but are not exactly the same," the ALJ is required to "articulate how [he] considered the other most persuasive factors" for those opinions or findings.  *Id.* §§ 404.1520c(b)(3), 416.920c(b)(3).

Although ALJs are no longer directed to afford controlling weight to treating source opinions, the regulations still recognize the "foundational nature" of the observations of treating sources, and "consistency with those observations is a factor in determining the value of any [treating source's] opinion." *Acheampong v. Comm'r of Soc. Sec.*, No. 20-CV-3293 (PKC), 2021 WL 4480678, at *4 (E.D.N.Y. Sept. 30, 2021) (collecting cases).  Because a treating source examines a claimant directly, they "may have a better understanding of a claimant's impairment(s) than if the medical source only reviews evidence in a claimant's folder." *Id.* (brackets and ellipses omitted) (quoting 20 C.F.R. §§ 404.1520c(c)(3)(v), 416c(c)(3)(v)).

**B.     The ALJ Improperly Assessed Plaintiff's Medical Source Opinions**

In making his mental RFC determination, the ALJ considered records from (1) Dr. Richard Storch, Plaintiff's treating psychiatrist, (2) Colin Schlossman, Ph.D., a psychological consultant,

8

and (3) Dr. H. Rozelman, a non-examining consultant. As noted, Plaintiff has been diagnosed with bipolar disorder. (Tr. 510.)

### 1. Dr. Storch

At the time he provided his opinion in November 2017, Dr. Storch had been Plaintiff's treating psychiatrist for three years, during which time he treated her monthly. (Tr. 510.) Dr. Storch opined that Plaintiff had "marked" limitations in understanding and memory, concentration and persistence, social interactions, and adaptation.[6] (Tr. 513.) He also concluded that Plaintiff would likely be absent from work "[m]ore than three times per month" because of her impairments. (Tr. 514.) In support of these conclusions, Dr. Storch noted that Plaintiff suffered from "depressed mood," "anxiety," "constricted" affect, "hostility or irritability," "racing thoughts," "difficulty thinking or concentrating," "pervasive loss of interest," "psychomotor abnormalities," "speech abnormalities," "social withdrawal or isolation," "paranoia/suspiciousness," and "sleep disturbances." (Tr. 511–13.)

The ALJ concluded that "the opinion of Dr. Storch [was] not persuasive in light of the record as a whole." (Tr. 202–03.) The ALJ explained that "[a] longitudinal review of Dr. Storch's extensive monthly outpatient visits . . . simply fail[ed] to disclose that he ha[d] reported any of [his] findings," and that "[t]he progress notes instead show[ed] significant improvement following [Plaintiff's] hospitalization, with [Plaintiff] dealing with a lot of situational stressors but not having significant trouble with attention, concentration, memory, social interaction, or independently adapting or managing herself." (Tr. 203.)

---

[6] According to the form Dr. Storch used, "marked" limitations mean the symptoms at issue would interfere with the claimant's ability to work for more than two thirds of an eight-hour workday. (Tr. 513.)

9

Contrary to the ALJ's conclusion, however, Dr. Storch's treatment notes reflect many—if not all—of the "signs and symptoms" he listed in "support [of his] diagnoses and assessment." (Tr. 511.)  As Plaintiff points out, Dr. Storch noted during treatment sessions that Plaintiff suffered from depressed mood (Tr., 520, 522, 524, 540), anxiety (Tr. 520, 532), constricted affect (Tr. 522, 537), racing thoughts (Tr. 534), and sleep disturbances (Tr. 534).  The ALJ was not permitted to reject the medical conclusions that Dr. Storch drew from these findings.  In fact, "[s]uch an assessment is beyond the scope of the ALJ's authority, since 'neither the trial judge nor the ALJ is permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion.'" *Flynn v. Comm'r of Soc. Sec. Admin.*, 729 F. App'x 119, 121 (2d Cir. 2018) (summary order) (quoting *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000)) (concluding that the ALJ, who "expended significant energy recounting the treating physician's notes," lacked authority to say that those "notes indicated nothing more than 'mild anxiety'").

Other evidence in the record also supports Dr. Storch's findings.  For example, as discussed below, a psychological consultant evaluated Plaintiff on behalf of the SSA and reached similar conclusions to Dr. Storch.  (*See* Tr. 585.)  And Plaintiff testified that she suffers from chronic depression every day, has anxiety, and has "suicidal and homicidal ideations."  (Tr. 227.)  She also testified that she has "not really" experienced any improvement in her symptoms over the past 1.5 years.  (Tr. 222); *see Soto v. Comm'r of Soc. Sec.*, No. 19-CV-4631 (PKC), 2020 WL 5820566, at *9 (E.D.N.Y. Sept. 30, 2020) (remanding in part because the "opinion [of an assessing doctor] about [the] [p]laintiff's limited ability to handle work stress [was] supported by [the] [p]laintiff's hearing testimony").  Given that Dr. Storch had been Plaintiff's treating psychiatrist for three years, and in light of the evidence supporting his conclusions, it was error for the ALJ to discount his opinion on the basis that it was inconsistent with his treatment notes or the record as a whole.

10

In any event, "to the extent the ALJ found any purported inconsistencies to be significant, he could have requested more information from [Dr. Storch] to reconcile any internal inconsistency." *Saposnick v. Comm'r of Soc. Sec.*, No. 20-CV-3844 (PKC), 2022 WL 595184, at *5 (E.D.N.Y. Feb. 28, 2022); *see also McGill v. Saul*, No. 18-CV-6430 (PKC), 2020 WL 729774, at *4 (E.D.N.Y. Feb. 13, 2020) ("[S]ince the ALJ deemed the treating physicians' opinions lacking in support, the ALJ should have sought clarification from them regarding the deficiencies she perceived in their opinions."); *Romero v. Colvin*, No. 11-CV-3920 (ENV), 2016 WL 74820, at *4 (E.D.N.Y. Jan. 6, 2016) ("[T]o the extent that the ALJ perceived internal inconsistencies in [the treating physician]'s opinion, he was obliged to recontact [the treating physician] and attempt to resolve them.").

Thus, the ALJ improperly evaluated the supportability and consistency of Dr. Storch's opinion, especially given his relationship with Plaintiff as her treating psychiatrist. *See* 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

### 2. Dr. Schlossman

Dr. Colin Schlossman, a psychological consultant for the SSA, evaluated Plaintiff on October 10, 2017. (Tr. 582.) He opined that Plaintiff "showed mild limitation sustaining an ordinary routine and regular attendance at work," "moderate limitation in sustaining concentration and performing a task at a consistent pace," and "marked limitations in understanding, remembering, or applying complex directions and instructions; using reason and judgment to make work-related decisions; interacting adequately with supervisors, coworkers, and the public; and regulating emotions, controlling behavior, and maintaining well-being." (Tr. 585.) Plaintiff reported to Dr. Schlossman that she "wakes up approximately four times per sleep cycle," is depressed every day, and suffers "hopelessness, irritability, psychomotor agitation, fatigue/loss of energy, worthlessness, and concentration difficulties." (Tr. 583.) She also reported anxiety,

11

"excessive apprehension and worry," and "racing thoughts," and noted that "she has anger outbursts, especially on her last job." (Tr. 583.) Dr. Schlossman concluded that Plaintiff's psychiatric and cognitive problems "may significantly interfere with [her] ability to function on a daily basis." (Tr. 585.)

The ALJ "rejected the opinion of Dr. Schlossman" on the ground that "it was not supported by [Plaintiff's] treatment history, activities of daily living, mental status examination," Plaintiff's "capacity to travel independently, and adequate social presentation on the consultive exam," and the fact that it was "dated just a few months after [Plaintiff's] lengthy inpatient hospitalization." (Tr. 203.) The ALJ also concluded that "Dr. Schlossman's own mental status findings show[ed] normal attention and concentration, and only mildly impaired recent and [*sic*] memory, as well as [Plaintiff's] self-reported ability to perform a large number of daily activities independently." (Tr. 203.)

But although Dr. Schlossman noted that Plaintiff's "attention and concentration were intact" during the examination, this evidence is less reliable "in the context of mental illness where . . . a one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health." *Estrella*, 925 F.3d at 98. Further, Dr. Schlossman also observed in the "attention and concentration" section of his report that Plaintiff "was not able to do the serial 7s task." (Tr. 584.) And Plaintiff reported to Dr. Schlossman "that every day she has excessive apprehension and worry, irritability, restlessness, difficulty concentrating, and racing thoughts." (Tr. 583.) The ALJ did not explain how these findings were inconsistent with "a moderate limitation in sustaining concentration and performing a task at a consistent pace." (Tr. 585); 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) (requiring an ALJ, *inter alia,* to "explain how [he] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative findings").

12

In any event, the ALJ was not "permitted to substitute his own expertise or view of the medical proof." *Flynn*, 729 F. App'x at 121.

As to Plaintiff's reports of daily functioning, "a claimant need not be an invalid to be found disabled under the Social Security Act." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998); *see also Murdaugh v. Sec'y of Dep't of Health & Hum. Servs. of U.S.*, 837 F.2d 99, 102 (2d Cir. 1988) (holding that a claimant was disabled even though he "water[ed] his landlady's garden, occasionally visit[ed] friends and [was] able to get on and off an examination table"); *Scognamiglio v. Saul*, 432 F. Supp. 3d 239, 252 (remanding because being able to drive, go for short walks, prepare simple meals, go outside, shop in stores, and go to church did not preclude a finding of disability). Plaintiff's ability to "dress, bathe, and groom herself, cook and prepare food, do general cleaning, shop, manage her own money, and take public transportation when needed" does not undermine the medical assessment that her psychiatric and cognitive problems "may significantly interfere with [her] ability to function on a daily basis." (Tr. 585); *see Soto*, 2020 WL 5820566, at *8 (finding it significant that although an examiner "observed that [the] [p]laintiff was neatly groomed, maintained good eye contact, and appeared pleasant and cooperative, he also noted that [the] [p]laintiff reported feeling depressed for some time each day"). And, as Dr. Schlossman also noted, Plaintiff "does not drive," she "has her daughter to help her with the laundry," and she "has no hobbies or interests." (Tr. 585.)

Finally, the purported inconsistencies the ALJ noted do not concern Dr. Schlossman's opinion that Plaintiff had "marked limitations in understanding, remembering, or applying complex directions and instructions; using reason and judgment to make work-related decisions; interacting adequately with supervisors, coworkers, and the public; and regulating emotions, controlling behavior, and maintaining well-being." (Tr. 585.) These impairments appear

13

consistent with Plaintiff's report that she "has anger outbursts, especially on her last job." (Tr. 583.) Further, the ALJ's observation that "there is no longer evidence of substance use or difficulty interacting with others" (Tr. 203) was not supported by the record. Although Plaintiff had not used cocaine or alcohol for six months when she saw Dr. Schlossman, Plaintiff still reported that "she *has* anger outbursts," "withdraws socially," and is depressed "every day" (Tr. 583 (emphasis added)). The ALJ thus improperly evaluated this evidence in discounting Dr. Schlossman's opinion.

        3.     Dr. Rozelman

By contrast, the ALJ accepted "Dr. [H.] Rozelman's reasons for discounting the Dr. Schlossman opinion." (Tr. 203.) Dr. Rozelman, a non-examining consultant, reviewed Dr. Schlossman's consultative evaluation and found that Dr. Schlossman's "statement of severity is not supported" by Plaintiff's therapy history and activities of daily living, and that Plaintiff is "capable of simple work [and] mak[ing] simple decisions." (Tr. 253.) Dr. Rozelman acknowledged that "[Plaintiff's] allegations [were] consistent with objective findings," but opined that they were "not to the extent alleged." (Tr. 253.)

Unlike Dr. Storch, who treated Plaintiff for years, and Dr. Schlossman, who examined Plaintiff, Dr. Rozelman never met or personally examined Plaintiff. (Tr. 203.) And Dr. Rozelman provided little explanation for rejecting Dr. Schlossman's conclusions. (Tr. 253.) In short, the ALJ lacked a sufficient basis to credit Dr. Rozelman's opinion while rejecting those of Dr. Storch and Dr. Schlossman.

\*     \*     \*

Because the ALJ improperly evaluated the medical source opinions, the Court must remand for further proceedings. *See, e.g.*, *Soto*, 2020 WL 5820566, at \*8 (remanding a post-treating-

14

physician-rule case when "the ALJ failed to properly evaluate the consistency and supportability of [the plaintiff's primary care physician's] opinion as required by 20 C.F.R. § 404.1520c").

## II. The Medical-Vocational Guidelines

Plaintiff also argues that the ALJ erred by relying on the Medical-Vocational Guidelines. (Dkt. 13 at 20.)

### A. Legal Standard – Medical-Vocational Guidelines

The Medical-Vocational Guidelines "reflect the analysis of the various vocational factors (*i.e.*, age, education, and work experience) in combination with the individual's [RFC] (used to determine his or her maximum sustained work capability for sedentary, light, medium, heavy, or very heavy work) in evaluating the individual's ability to engage in substantial gainful activity in other than his or her vocationally relevant past work." 20 C.F.R. Pt. 404, Subpt. P, App'x 2, § 200(a). "The rules do not direct factual conclusions of disabled or not disabled for individuals with solely nonexertional types of impairments." *Id.* § 200(e)(1).

"[T]he ALJ cannot rely on the [Medical-Vocational Guidelines] if a non-exertional impairment has any more than a 'negligible' impact on a claimant's ability to perform the full range of work, and instead must obtain the testimony of a vocational expert." *Selian*, 708 F.3d at 421. "[I]f a claimant's nonexertional impairments 'significantly limit the range of work permitted by his exertional limitations' then the [Medical-Vocational] grids obviously will not accurately determine disability status because they fail to take into account claimant's nonexertional impairments." *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986).

### B. The ALJ Improperly Relied on the Medical-Vocational Guidelines

The ALJ "consider[ed] [Plaintiff's] [RFC], age, education, and work experience in conjunction with the Medical-Vocational Guidelines" and stated that "if [Plaintiff] can perform all or substantially all of the exertional demands at a given level of exertion, the medical vocational

15

rules direct a conclusion of either 'disabled' or 'not disabled' depending upon [her] vocational profile." (Tr. 204.) The ALJ concluded that Plaintiff's ability to "perform simple work and make simple decisions, comport[ed] with the full range of unskilled work." (Tr. 205 (citations omitted).)

But bipolar disorder creates non-exertional limitations. *See Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 439 (S.D.N.Y. 2010). Thus, the ALJ was not permitted to rely on the Guidelines if Plaintiff's bipolar disorder and associated mental impairments significantly diminished her ability to work. As discussed, the ALJ improperly discounted the opinions of Drs. Storch and Schlossman, and thus failed to properly evaluate the medical opinion evidence in determining Plaintiff's mental RFC. Therefore, the ALJ could not accurately assess whether Plaintiff's mental impairments would significantly limit her ability to work. On remand, the ALJ will need to reevaluate the medical opinions, and if the ALJ finds Plaintiff to have moderate psychiatric limitations, must consult a vocational expert. *See Baldwin v. Astrue*, No. 07-CV-6958, 2009 WL 4931363, at *28 (S.D.N.Y. Dec. 21, 2009).

### III. Plaintiff's Subjective Statements

In making the RFC determination, the ALJ concluded that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record." (Tr. 198.) Plaintiff argues that, in reaching that conclusion, the ALJ improperly discounted her subjective complaints of inability to work.

#### A. Legal Standard – Subjective Statements

"When determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question . . . ." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (*per curiam*)

(citations omitted). The ALJ "may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Id.* (citation omitted).

"An ALJ's credibility finding as to the claimant's disability is entitled to deference by a reviewing court, in large part because the ALJ had the opportunity to observe [the] plaintiff's demeanor while the plaintiff was testifying." *Chiappa v. Comm'r of Soc. Sec.*, No. 18-CV-3508 (ER) (CM), 2019 WL 5722119, at *14 (S.D.N.Y. Aug. 16, 2019) (citations, quotations, and brackets omitted), *report and recommendation adopted*, 2019 WL 4894360 (S.D.N.Y. Oct. 1, 2019). "Thus, a district court will not 'second-guess' the ALJ's credibility finding 'where the ALJ identified specific record-based reasons for his ruling,'" *id.* (quoting *Stanton v. Astrue*, 370 F. App'x 231, 234 (2d Cir. 2010) (summary order)), "and where his determination is supported by substantial evidence," *id.* (citing *Selian*, 708 F.3d at 420).

Still, "[a] finding that the witness is not credible must . . . be set forth with sufficient specificity to permit intelligible plenary review of the record." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 260–61 (2d Cir. 1988) (citation omitted). "The failure to make credibility findings regarding the [claimant's] critical testimony [can] fatally undermine[] the [Commissioner's] argument that there is substantial evidence adequate to support his conclusion that [the] claimant is not under a disability." *Id.* (citation omitted). "Further, an ALJ's credibility determination—like an ALJ's evaluation of a treating physician opinion—cannot be based on unsupported interpretations of raw medical evidence or mischaracterizations of the record." *Chiappa*, 2019 WL 5722119, at *15 (citation omitted).

"The ALJ must follow a two-step process to evaluate a claimant's assertions of pain and other symptoms." *Cabassa v. Astrue*, No. 11-CV-1449 (KAM), 2012 WL 2202951, at *13 (E.D.N.Y. June 13, 2012). "At the first step, the ALJ must decide whether the claimant suffers

17

from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Genier*, 606 F.3d at 49 (citing 20 C.F.R. § 404.1529(b)). "If the claimant does suffer from such an impairment, at the second step, the ALJ must consider 'the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record." *Id*. (brackets omitted) (citing 20 C.F.R. § 404.1529(a)).

At the second step, the ALJ "must consider statements the claimant or others make about her impairment(s), her restrictions, her daily activities, her efforts at work, or any other relevant statements she makes to medical sources during the course of examination or treatment, or to the agency during interviews, on applications, in letters, and in testimony in its administrative proceedings." *Villegas Andino v. Comm'r of Soc. Sec.*, No. 18-CV-1780 (PKC), 2019 WL 4575364, at *5 (E.D.N.Y. Sept. 19, 2019) (quoting *Genier*, 606 F.3d at 49). "The issue is . . . whether [P]laintiff's statements about the intensity, persistence, or functionally limiting effects of her pain are consistent with the objective medical and other evidence." *Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 435 (S.D.N.Y. 2010) (citations omitted).

### B. The ALJ Improperly Discounted Plaintiff's Subjective Statements

Plaintiff testified that she suffers from chronic depression every day, has anxiety, and has "suicidal and homicidal ideations." (Tr. 227.) She also testified that she has "not really" experienced any improvement in her symptoms over the past 1.5 years. (Tr. 222.) In rejecting Plaintiff's subjective statements, the ALJ first acknowledged that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. 198.) At the second step, the ALJ concluded that Plaintiff's statements concerning the effects of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record" and that the objective evidence did "not show a significant degree of debilitation." (Tr.

18

198.) The ALJ pointed to evidence that Plaintiff does household chores and socializes with friends on the phone (Tr. 199), as well as Plaintiff's testimony that she takes the bus for doctors' appointments (*see* Tr. 232), and concluded that this showed that she has "a significant range of daily activities" (Tr. 199).

But "[a]n individual can perform each of these daily activities and still experience debilitating pain at the intensity and persistence and with the limiting effects she claims." *Larsen v. Astrue*, No. 12-CV-414 (CBA), 2013 WL 3759781, at *3 (S.D.N.Y. July 15, 2013) (citations omitted). As mentioned, "[t]he Second Circuit has repeatedly recognized that [a] claimant need not be an invalid to be found disabled." *Colon v. Astrue*, No. 10-CV-3779 (KAM), 2011 WL 3511060, at *14 (E.D.N.Y. Aug. 10, 2011) (quotations omitted). "Indeed, it is well-settled that the performance of basic daily activities does not necessarily contradict allegations of disability, as people should not be penalized for enduring the pain of their disability in order to care for themselves." *Cabibi v. Colvin*, 50 F. Supp. 3d 213, 238 (E.D.N.Y. 2014) (quotations omitted).

And Plaintiff's ability to take the bus to doctors' appointments does not undermine her claims of disability, especially where there is no evidence that she takes buses for non-essential purposes. Plaintiff also testified that she has difficulties sleeping, does not do anything for fun, and does not go outside often. (Tr. 227, 232.) Plaintiff's statements regarding the subjective effects of her mental impairment are consistent with the evidence that she has ongoing depression, acute stress, and mood instability. (Tr. 511.)

On remand, the ALJ will need to reconsider Plaintiff's hearing testimony in accordance with the appropriate legal standards.

## CONCLUSION

For the reasons above, the Court grants Plaintiff's motion for judgment on the pleadings.[7] The Commissioner's decision is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Memorandum & Order. The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 31, 2022
       Brooklyn, New York

---

[7] Because the Court remands for the reasons discussed, it does not address Plaintiff's additional argument that the Appeals Council improperly discounted additional medical evidence she presented. *See Kuhaneck v. Comm'r of Soc. Sec.*, 357 F. Supp. 3d 241, 245, 248–49 (W.D.N.Y. 2019) (declining to consider a plaintiff's contention that the Appeals Council "failed to properly address new evidence," because remand was required for reevaluation of opinion evidence). On remand, the ALJ should consider the additional evidence. This includes an evaluation from Dr. Christianah Ogunlesi, a psychiatrist who has treated Plaintiff since May 2014. Dr. Ogunlesi opined that Plaintiff frequently experienced irritability and a depressed mood and "episodes of decompensation or deterioration in a work or work-like setting which causes [her] to withdraw from the situation and/or experience an exacerbation of symptoms." (Tr. 110.) Further, Dr. Ogunlesi opined that Plaintiff suffers from moderate or moderate-to-marked limitations with respect to her mental capacities, and that Plaintiff would likely miss work more than three times per month as a result of her impairments. (Tr. 111–12.) The ALJ should also obtain any treatment notes from Dr. Ogunlesi.